## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Yulianny D. Aguilar-Linares, <br><br> Petitioner, <br><br> v. <br><br><br> Todd Lyons, et al., <br><br> Respondents. | Civil No. 26-1122 (GLS) |

### AMENDED OPINION AND ORDER

Before the Court is Yulianny D. Aguilar-Linares' ("Petitioner") Petition for Writ of Habeas Corpus in which she asserts that her detention by Immigration and Customs Enforcement ("ICE") violates her due process rights and seeks her immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). For the reasons set forth below, the Petition is **GRANTED**.

### I.    Factual and Procedural Background

Petitioner is a twenty-nine (29) year-old Venezuelan national who entered the United States on August 31, 2022, seeking asylum. Docket No. 4 at p. 24. Petitioner has resided in Chicago and worked as a housekeeper since arriving in the United States and has no record of arrests or criminal history. Docket No. 17-1. On March 1, 2026, Petitioner was arrested at the Luis Muñoz Marín International Airport while attempting to return to Chicago following a domestic trip to Puerto Rico. Id.

On March 3, 2026, at 10:25 a.m. Petitioner filed the writ of habeas corpus, claiming that her detention violates the Immigration and Nationality Act ("INA") and her due process rights under the Fifth Amendment. Docket Nos. 4, 19-1. Petitioner seeks her immediate release or, alternatively, that the Government be required to provide a bond hearing at which it must demonstrate that she poses a flight risk or a danger to the community to justify continued detention. Petitioner also seeks an award of reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

1

On the same day, Petitioner filed a motion for a temporary restraining order ("TRO"). Docket No. 3. She claimed that, because Puerto Rico lacks a permanent Immigration Detention Facility, she would soon be transferred to a detention facility in Miami, Florida, and this would hinder the Court's ability to grant habeas relief. On March 4, 2026, the Court granted the TRO, temporarily enjoining Respondents from transferring her out of the District of Puerto Rico and ordering them to show cause in writing as to why the habeas petition should not be granted. Docket No. 7. Even though the Court granted the TRO on March 4, 2026, Respondents were served summons of the petition and TRO on March 16, 2026. See Docket No. 15. By the time Respondents were served, Petitioner had been transferred to the Broward Transitional Center in Pompano Beach, Florida on March 3, 2026, at around 4:30 p.m. and subsequently to the North Lake Processing Center in Baldwin, Michigan by March 14, 2026. Docket Nos. 16-1-16-2. Because Petitioner was transferred out of the jurisdiction before Respondents were aware of the petition or TRO, the TRO became moot. See Docket No. 12.

On March 23, 2026, the Government filed an opposition to the petition and a motion to dismiss for lack of subject-matter jurisdiction or, alternatively, for the transfer of the habeas petition to the Western District of Michigan, where Petitioner is currently detained. Docket Nos. 17, 16. Petitioner opposed the Government's motion at Docket No. 19. On March 24, 2026, the undersigned held an argumentative hearing during which the Government conceded that the Court had subject-matter jurisdiction to adjudicate the petition since Petitioner was detained in Puerto Rico at the time of filing. The Government's motion to dismiss was thus deemed moot. See Docket No. 20. The Government also agreed to serve summons on the Petitioner's immediate custodian in North Lake Processing Center in Baldwin, Michigan and to assume the custodian's representation before this Court.[1] The parties also consented to Magistrate Judge jurisdiction for all further proceedings. Id. However, the Government continues to seek transfer to the Western District of Michigan, while Petitioner asserts that the case should proceed before this Court. Petitioner and the Government filed corresponding briefs at Docket Nos. 21 and 24, agreeing that there was no need for an evidentiary hearing and that the Court could resolve this case on the papers.

---

[1]    Refer to the 10:30 mark in the audio recording for the hearing held on March 24, 2026. Docket No. 20.

## II.    Discussion

### A.    The District Court of Puerto Rico is the Appropriate Venue

The petition was filed on March 3, 2026, at around 10:25 a.m., while the Petitioner was still detained in the District of Puerto Rico. Docket Nos. 16, 21. At the time the petition was filed, Petitioner was under the custody and control of Respondent Garret J. Ripa, the Field Office Director of ICE's Miami Field Office, which has jurisdiction over Puerto Rico. Docket No. 21. Petitioner was transferred to the Broward Transitional Center in Pompano Beach, Florida on March 3, 2026, at around 4:30 p.m. Docket Nos. 16, 21. Since Petitioner was detained in Puerto Rico at the time the petition was filed, the Court determined, and the Government agreed, that it had jurisdiction to adjudicate this petition in accordance with Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004), and denied the Government's motion to dismiss as moot. See Docket No. 20. However, the Government alternatively requested for the petition to be transferred to the Western District of Michigan, where Petitioner is currently detained. See Docket No. 16. The Government invokes transfer statutes 28 U.S.C. §§ 1631, 1404(a) to support the transfer of venue.[2] Docket No. 16 at p. 5; Docket No. 24 at p. 2.

Sections 1631 and 1404(a) are applicable transfer statutes when a habeas petition is filed in the wrong venue. Ozturk v. Trump, 777 F. Supp. 3d 26, 42-43 (D. Mass. 2025). Under Section 1631, "whenever a civil action is […] filed with […] a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action to any other such court […] in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The Government argues that transfer to the Western District of Michigan is proper because that is the venue in which Petitioner was detained when the petition was first notified to any of the Respondents. Docket No. 16 at p. 5. On the other hand, Petitioner contends that this statute is inapplicable because it only allows transfer of venue when the court finds that it lacks jurisdiction. Petitioner further argues that Section 1631 allows transfer only to a court where the action "could have been brought at the time it was filed." Petitioner emphasizes that the case could not have been brought in Michigan at the time of filing and contends that, even

---

[2] During the argumentative hearing, the Government stated that they would present new arguments in favor of transferring the petition to the Michigan venue in their post-hearing brief (Docket No. 24) and that they would therefore withdraw the arguments for transfer originally raised in their motion at Docket No. 16. But in any event, the Court considers both the Government's original basis for transfer under Section 1631 and their subsequent transfer argument under Section 1404(a).

if transfer were theoretically permissible, the interest of justice weighs heavily against the transfer. Respondents also invoke 28 U.S.C. § 1404(a), which permits a district court to transfer any civil action to any other district "where it may have been brought" or to any district to which all parties consented "for the convenience of parties and witnesses, in the interest of justice[.]" They further argue that Petitioner has no ties to Puerto Rico, making transfer appropriate. Docket No. 24.

In Hoffman v. Blaski, 363 U.S. 335, 342-344 (1960), the U.S. Supreme Court considered whether the phrase "where it might have been brought" in Section 1404(a) requires that the transferee court have jurisdiction at the time the action was filed or whether the requirement is only that the transferee court have jurisdiction at the time of the intended transfer. The Supreme Court concluded that the statute's "unambiguous, direct (and) clear" language requires jurisdiction to exist at the transferee venue at the time of filing. Id. at p. 343. Courts have made this same reading of the "could have been brought" language in Section 1631. See González v. Grondolsky, 152 F. Supp. 3d 39, 47 (D. Mass. 2016); Ozturk, 777 F.Supp.3d at 43 ("because Ozturk was confined overnight in Vermont when the Petition was filed, the District of Vermont is the proper transferee court"); DeCarvalho v. Muñiz, 2021 WL 5811301, at *1 (D. Mass. Dec. 7, 2021) (District of Massachusetts lacked jurisdiction over habeas petition filed there after petitioner was transferred to New Hampshire).

The Petitioner was detained in the District of Puerto Rico at the time of filing on March 3, 2026, at around 10:45 a.m. Consequently, the action could not have been brought in the Western District of Michigan, rendering transfer to that district inappropriate under either Section 1404(a) or Section 1631. See Rumsfeld, 542 U.S. at 441 ("[W]hen the Government moves a habeas petitioner after [Petitioner] properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."). And even if the Court were to find that the petition could have been filed in the Western District Court of Michigan, the interest of justice nonetheless weighs heavily against the transfer. The parties have already consented to Magistrate Judge jurisdiction to expedite resolution, and the Government has confirmed this Court's jurisdiction to adjudicate the case and provide the relief sought by the Petitioner, if warranted.[3] Further, while the Government contends that litigating the case in Puerto Rico would limit access

---

[3]    Refer to the 17:23 mark in the audio recording for the hearing held on March 24, 2026. Docket No. 20.

to witnesses and the evidence, that argument is contrary to the Government's representation that the matter could be submitted and resolved without an evidentiary hearing or further oral arguments. See Docket No. 17 at p. 2. Far from expediting the efficient and swift resolution of this matter, a transfer at this stage would serve only to delay and frustrate the prompt administration of justice. The Government's request for transfer of venue is **DENIED**.

B.       **Habeas Petition**

"Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226." Gómez v. Hyde, 2025 WL 186299, at *2 (D. Mass. July 7, 2025). Section 235 of the INA, codified at 8 U.S.C. § 1225, governs the inspection of individuals seeking admission into the United States. Under this provision, an "applicant for admission" includes any noncitizen "who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]" 8 U.S.C. § 1225(a)(1). Section 1225(b)(2)(A) provides for mandatory detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" "Detention under Section 1225(b)(2) is generally mandatory, and the statute does not provide for bond hearings." Cruz-Santana v. González-Ramos, 2026 WL 172520, at *4 (D.P.R. Jan. 22, 2026) (citing Jennings v. Rodríguez, 583 U.S. 281, 287 (2018)).

By contrast, Section 236 of the INA, codified at 8 U.S.C. § 1226, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Jennings, 583 U.S. at 289. Under this provision, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" with certain conditions for release or conditional parole. 8 U.S.C. § 1226(a). The First Circuit has determined that the Due Process clause of the Fifth Amendment entitles a noncitizen detained under this statute to a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that the noncitizen is dangerous or by a preponderance of evidence that she poses a risk of flight. Hernández-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). On the other hand, noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention under 8 U.S.C. § 1226(c).

5

Petitioner claims that the Government's position as to her detention status under Section 1225(b)(2)(A) is wrong and that she could have only been detained pursuant to Section 1226(a). Petitioner further argues that detention under Section 1226(a) requires a warrant issued by the Attorney General and that, since no warrant was issued, she should be released immediately. Alternatively, Petitioner asks this Court to order Respondents to provide her with a bond hearing. Respondents argue that Petitioner is properly detained pursuant to Section 1225(b)(2)(A)'s mandatory detention provision as an "applicant for admission" to the United States. At the crux of the Government's argument is the assertion that an "admission" under the INA means not just physical admission, but lawful entry after inspection by immigration authorities. Docket No. 17 at p. 25. In short, the Government contends that "applicants for admission" for purposes of the INA are both noncitizens detained while attempting to enter the United States and noncitizens who are already present in the United States but who have not been legally admitted into the United States.

Petitioner's detention falls under Section 1226(a), and not Section 1225(b)(2) as argued by the Government. As courts across the First Circuit have explained, the latter applies to arriving applicants for admission and the former to noncitizens who are already present in the United States and are later arrested and detained. See Moreira Aguiar v. Moniz, 2025 WL 2987656, at *3 (D. Mass. Oct. 22, 2025); Rodríguez v. Nessinger, 2025 WL 3306576, at *1 (D.R.I. Oct. 17, 2025); Chogllo Chafla v. Scott, 804 F. Supp. 3d 247, 259-260 (D. Me. 2025); Chiliquinga Yumbillo v. Stamper, 2025 WL 2783642, at*4 (D. Me. Sept. 30, 2025); Batista Santiago v. Hyde, 2026 WL 36472, at *2 (D. Mass. Jan. 6, 2026); Jiménez v. FCI Berlin, Warden, 799 F. Supp. 3d 59, 66-67 (D.N.H. 2025); Escobar v. Hyde, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); Tomas Elias v. Hyde, 2025 WL 3004437, at *2-3 (D.R.I. Oct. 27, 2025). "Ultimately, if the Government's interpretation of section 1225(b)(2) were correct, it would preclude the need for section 1226(a) to exist at all: if section 1225(b)(2) is a catch-all provision that applies to *all* noncitizens residing in the country, then there would be no need for Congress to create a procedure for discretionary detention in section 1226(a)." Chogllo Chafla, 804 F. Supp. 3d at 259.

In its arguments, the Government ignores a wealth of decisions in this District holding that noncitizens detained while residing in the United States are subject to detention under Section 1226(a) and entitled to a bond hearing. See García v. Ripa, 2026 WL 184719, at *4 (D.P.R. Jan. 23, 2026); Cruz-Santana v. González-Ramos, 2026 WL 172520, at *3-5 (D.P.R. Jan. 22, 2026); Muñoz de la Rosa v. Ripa, Civ. No. 26-1094 (PAD) (D.P.R. Feb. 19, 2026) (Docket No. 5);

González-Rucci v. González-Ramos, Civ. No. 26-1045 (SCC) (D.P.R. Jan. 19, 2026) (Docket No. 12); Ibaldi-Valdéz v. Ripa, Civ. No. 26-1046 (ADC) (D.P.R. Jan. 27, 2026) (Docket No. 7); Lora-Salazar v. Ripa, et al., Civ. No. 26-1014 (MAJ) (D.P.R. Jan. 13, 2026) (Docket No. 5); Mari v. Ripa, Civ. No. 26-1172 (ADC) (MBA) (pending objections and review by the presiding District Judge) (April 13, 2026) (Docket No. 34). The Government has not persuasively argued why this Court should depart from the overwhelming consensus that Section 1226(a) governs the detention for noncitizens "arrested and detained" while residing in the United States. García v. Ripa, 2026 WL 184719, at *4 (applying § 1225(b)(2) to "noncitizens who are already present in the United States and are later arrested and detained" would "render Section 1226(a) effectively redundant"); Cruz-Santana, 2026 WL 172520, at *4 ("district courts have similarly rejected the adoption of a broad interpretation of § 1225(b)(2) that would, consequently, generate overlap with Section 1226(a) as to erroneously deny the noncitizen's right to a bond hearing").

The Government relies on Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), a recent decision by the Board of Immigration Appeals ("BIA"), in which the BIA held that all noncitizens who enter the United States without admission are subject to detention under § 1225(b)(2)(A) and ineligible for bond hearings. "This Court, however, is not bound by BIA interpretations that conflict with the statutory text or controlling circuit precedent." Cruz-Santana, 2026 WL 172520, at *4 (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400 (2024)). As discussed above, district courts across the First Circuit have repeatedly rejected Matter of Yajure Hurtado's interpretation and upheld the right to a bond hearing for noncitizens who had already entered the United States at the time of apprehension. Cruz-Santana, 2026 WL 172520, at *4 (citing Escobar v. Hyde, 2025 WL 2823324, at *3; Moreira Aguiar v. Moniz, 2025 WL 2987656, at *3; Tomas Elias v. Hyde, 2025 WL 3004437, at *3; Lora-Salazar v. Ripa, Civ. No. 26-1014 (Docket Nos. 5, 13)).

As a final note, the Court is baffled by the Government's arguments with respect to the Supreme Court's holding in Jennings v. Rodríguez, 583 U.S. 281 (2018). The Government argues that Jennings established that noncitizens arrested in the United States without lawful admission are subject to detention under Section 1225(b)(2). Docket No. 17 at p. 36. But the Jennings decision stands for the opposite: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal

proceedings under §§ 1226(a) and (c).”). The Government conflates the <u>Jennings</u> analysis of whether 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) require bond hearings, with the question before the Court here— the statutory basis for Petitioner’s detention when she had been residing in the United States for more than three years at the time of her arrest in the Puerto Rico airport.

### III.     Remedy

Determining the statutory basis for detention is essential to resolving whether Petitioner is entitled to the requested relief. <u>See</u> <u>De Andrade v. Moniz</u>, 802 F. Supp. 3d 325, 331 (D. Mass. 2025). A noncitizen at the threshold of admission possesses only those rights that Congress has conferred by statute, whereas an individual who has already entered the United States is entitled to constitutional protections. <u>Id.</u> (citing <u>Department of Homeland Sec. v. Thuraissigiam</u>, 591 U.S. 103, 140 (2020); <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001)). Due process thus entitles a detainee held under Section 1226(a) to a hearing in which the government must “either (1) prove by clear and convincing evidence that [the detainee] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk.” <u>Hernández-Lara</u>, 10 F.4th at 41. As discussed above, Petitioner could have only been detained pursuant to 8 U.S.C. § 1226(a) and is therefore entitled— at the very least— to a bond hearing. However, Petitioner argues that ordering such a hearing is an insufficient remedy as her detention under Section 1226(a) is still unlawful.

Under Section 1226, a noncitizen may only be arrested pursuant to a “warrant issued by the Attorney General.” The Government had an opportunity to argue that the Petitioner was subject to detention under Section 1226 or to provide the Court with evidence that a warrant for her arrest has been issued. It was not until today that, for the first time, the Government presented evidence of a warrant issued on March 1, 2026. <u>See</u> Docket No. 33-1. To be sure, “[t]he burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner.” <u>Espinoza v. Sabol</u>, 558 F.3d 83, 89 (1st Cir. 2009). Petitioner has met her burden of showing that her detention under Section 1225(b)(2)(A) is unlawful and violates her procedural due process rights. Because she was actually detained under Section 1226(a), the only appropriate remedy is to provide Petitioner with a bond hearing.

### IV.     Costs and Attorney’s Fees

Petitioner seeks an award of attorney’s fees and costs under the Equal Access to Justice Act (“EAJA”), 28 U.S.C. § 2412. An award under the EAJA is appropriate only if the Court finds

that: (1) the petitioner prevailed in the civil case; (2) the petition was filed on time; (3) the Government's position was not substantially justified; and (4) no special circumstances exist that would make awarding fees against the Government unjust. Castañeda-Castillo v. Holder, 723 F.3d 48, 57 (1st Cir. 2013). Even if Petitioner could meet three of the elements discussed above, no costs and fees under the EAJA are warranted. At this juncture, the Court cannot conclude that the Government's position was not substantially justified. First, there is no settled First Circuit precedent on the issues posed in this case. See Michel v. Mayorkas, 68 F.4th 74, 78 (1st Cir. 2023) ("When the issue is a novel one with little to no precedent, courts have been hesitant to find the government's position not substantially justified."). Second, at least one court within this District has adopted the Government's interpretation of Section 1225. See Álvarez-Félix v. Ramos, 2026 WL 438160, at *7-8 (D.P.R. Feb. 17, 2026); see also Bernardo-Rodríguez v. Hyde, 2026 WL 370863, at *3 (D. Me. Feb. 10, 2026) ("To be substantially justified, the Respondents' position need only be one that a reasonable person could think is correct."). Accordingly, Petitioner's request for attorney's fees and costs under 28 U.S.C. § 2412(d) is **DENIED**.

### V.    Conclusion

For the reasons discussed above, the Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED to grant Petitioner a bond hearing within the next five (5) days**. The Government is **ORDERED** to file an informative motion within two (2) days of her bond hearing, stating whether the Petitioner was granted bond. The Court will retain jurisdiction over the case to ensure compliance with this order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of April 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

9